UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAIG CHAQUICO, <br> Plaintiff, <br> v. <br> DAVID FREIBERG, et al., <br> Defendants. | Case No. 17-cv-02423-MEJ <br><br> **ORDER RE: MOTION TO STRIKE** <br><br> Re: Dkt. No. 47 |

# INTRODUCTION

Plaintiff and Counterdefendant Craig Chaquico moves to strike Defendants and Counterclaimants'[1] counterclaim for tortious interference pursuant to California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16. Mot., Dkt. No. 47. Defendants filed an Opposition (Dkt. No. 67), and Plaintiff filed a Reply (Dkt. No. 85). The Court finds this matter suitable for disposition without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7-1(b). Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court **DENIES** Chaquico's motion for the following reasons.

# BACKGROUND

## A. Factual Background

In 1970, Paul Kantner formed the band Jefferson Airplane. First Am. Countercl. ("FACC") ¶¶ 2, 25, Dkt. No. 44.[2] Freiberg joined Jefferson Airplane in 1972. *Id.* In 1974,

---

[1] Defendants and Counterclaimants are David Freiberg, Donny Baldwin, Chris Smith, Jude Gold, and Catherine Richardson.

[2] The FACC contains two paragraphs numbered "2." This citation refers to the first paragraph 2.

Kantner and Freiberg formed the band Jefferson Starship with, among others, Chaquico. *Id.* This iteration of Jefferson Starship's membership changed over the years, but Kantner and Freiberg toured, performed, and recorded throughout this band's tenure. *Id.* Baldwin joined the band in 1982. *Id.* Kantner, Freiberg, and Baldwin continued with Jefferson Starship through the remainder of this incarnation of the band. *Id.*

Between 1974 and 1978, Jefferson Starship was incorporated in the state of California as Jefferson Starship, Inc. *Id.* ¶¶ 2, 26.[3] In 1978, Jefferson Starship, Inc. obtained a federal registration for the mark "JEFFERSON STARSHIP," Registration No. 1,093,429. *Id.* ¶¶ 3, 27.

Kantner left Jefferson Starship in 1984. *Id.* ¶¶ 4, 28. In March 1985, Kantner and Jefferson Starship, Inc. entered into an agreement regarding Kantner's separation from the band (the "1985 Agreement"). *Id.* Shortly thereafter, Jefferson Starship, Inc. renamed itself Starship, Inc. *Id.*

Freiberg, Baldwin, Chaquico, and other former Jefferson Starship members then formed the band Starship. *Id.* ¶¶ 5, 29. Freiberg left that band shortly after its formation. *Id.* Baldwin left in 1989, and Chaquico left in 1990. *Id.* In 1991, Chaquico reached an agreement with Starship, Inc. regarding his departure from Starship (the "1991 Agreement"). *Id.* ¶¶ 7, 31. Under the terms of the 1991 Agreement, Chaquico agreed to release all claims against Starship, Inc. and its future licensees. *Id.*

In 1990, Kantner reformed Jefferson Starship and began performing under that name. *Id.* ¶¶ 6, 30.

Between 1991 and 2008, Starship, Inc. re-assumed the name Jefferson Starship, Inc. *Id.* ¶¶ 8, 32. In 2008, Jefferson Starship, Inc. granted Kantner a lifetime exclusive license for the use of the mark JEFFERSON STARSHIP in connection with live musical performances and merchandising from Jefferson Starship, Inc. and Grace Slick, one of the founding members of Jefferson Starship. *Id.* ¶¶ 9, 33; *see id.* ¶ 2.

In 2009, Jefferson Starship, Inc.'s registration for the '3429 mark was cancelled for failure

---
[3] This citation refers to the second paragraph 2.

2

to renew. *Id.* ¶¶ 10, 34.

In late 2013 or early 2014, Chaquico formed a band called Jefferson Stateship. *Id.* ¶¶ 11, 35. Chaquico advertised Jefferson Stateship using historical images of Jefferson Starship, which included Freiberg. *Id.*; *see id.* ¶ 36 (examples of Chaquico's use of Freiberg's image). Chaquico also uses images with Baldwin's likeness to promote Chaquico and his own live music performances. *Id.* ¶ 42.

Kantner passed away in 2016. *Id.* ¶¶ 13, 37. At an unspecified time, Freiberg, Baldwin, and Richardson obtained a lifetime exclusive license for the JEFFERSON STARSHIP mark from Slick and Jefferson Starship, Inc. for musical performances and merchandise. *Id.* Jefferson Starship, Inc. reapplied for a federal registration in 2017, Serial Nos. 87,561,135; 87,575,600; and 87,575,603. *Id.* Counterclaimants continue to tour and perform as Jefferson Starship. *Id.* Freiberg is the only living original Jefferson Starship member to have performed on every Jefferson Starship album, including the 2008 album *Jefferson's Tree of Liberty*. *Id.*

In 2017, Chaquico contacted members of the current Jefferson Starship to arrange some live performances with Chaquico and Jefferson Starship. *Id.* ¶¶ 14, 38. When negotiations failed, Chaquico threatened to sue and "began his Fake Band campaign" on his website. *Id.* This campaign attacked the former and current Jefferson Starship iterations. *Id.* Chaquico posted images and comments stating the current Jefferson Starship is a "Fake Band," notwithstanding the fact that this Jefferson Starship includes original member Baldwin and is licensed to use the Jefferson Starship name. *Id.* For instance, Chaquico writes

> Fans should BEWARE OF MISLEADING MARKETING AND LICENSING! Beware of any fake bands, any fraudulent misleading marketing or FAKE recordings and false advertising of the original hits being done by lesser cover bands. This confuses the true legacy of the original world famous Jefferson Starship and Starship with other less artists who are using the same name, that are clearly trying to recreate the hit-making songs and styles of both the original Jefferson Starship and Starship. . . .

*Id.* ¶ 39.

Chaquico intentionally and willfully conducted the "Fake Band campaign" to disrupt Counterclaimants' business and discourage Jefferson Starship's fan base from attending the band's

3

live performances. *Id.* ¶¶ 14, 38. Indeed, venues and promotors have cancelled Counterclaimants' concerts and/or harmfully altered the terms of their agreements with Counterclaimants. *Id.* ¶ 41. For instance, as a result of Chaquico's interference, in June 2017, a Berkeley, California venue forced Counterclaimants to renegotiate a live performance agreement. *Id.* The new agreement was substantially less financially advantageous to Counterclaimants and cost them over $10,000. *Id.*

**B.    Procedural Background**

Chaquico initiated this lawsuit on April 27, 2017. *See* Compl., Dkt. No. 1. He brings claims against Counterclaimants for breach of contract and under the Lanham Act based on Counterclaimants' use of the Jefferson Starship name. *See* Sec. Am. Compl., Dkt. No. 29.

Counterclaimants assert three counterclaims against Chaquico: a claim for intentional interference with prospective economic advantage and two Lanham Act claims based on the use of the Jefferson Starship mark and the use of Freiberg's and Baldwin's images. FACC ¶¶ 43-58. Chaquico now moves for an order striking Counterclaimants' intentional interference with prospective economic advantage claim.

## LEGAL STANDARD

California Code of Civil Procedure section 425.16 provides a procedure for a court "to dismiss at an early stage nonmeritorious litigation meant to chill the valid exercise of the constitutional rights of freedom of speech and petition in connection with a public issue." *Sipple v. Found. for Nat'l Progress*, 71 Cal. App. 4th 226, 235 (1999) (citation and footnote omitted). This type of nonmeritorious litigation is referred to under the acronym "SLAPP," or "Strategic Lawsuit Against Public Participation." *Id.* The archetypal SLAPP complaint is a "generally meritless suit[ ] brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so." *Wilcox v. Sup. Ct.*, 27 Cal. App. 4th 809, 816 (1994) (disapproved on other grounds) (citation omitted). The anti-SLAPP statute provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that there is a probability that

4

the plaintiff will prevail on the claim.

Cal. Civ. Proc. Code § 425.16(b)(1). Section 425.16 thus "allows a court to strike any cause of action that arises from the defendant's exercise of his or her constitutionally protected free speech rights or petition for redress of grievances." *Flatley v. Mauro*, 39 Cal. 4th 299, 311-12 (2006).

California's anti-SLAPP statute is available to litigants in federal court. *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268, 1272 (9th Cir. 2013), *cert. dismissed sub nom. Elec. Arts Inc. v. Keller*, 135 S. Ct. 42 (2014); *see also Batzel v. Smith*, 333 F.3d 1018, 1025-26 (9th Cir. 2003). While section 425.16 "does not apply to federal law causes of action," it does apply to "state law claims that federal courts hear pursuant to their diversity jurisdiction[.]" *Hilton v. Hallmark Cards*, 599 F.3d 894, 900 n.2, 901 (9th Cir. 2010).

In ruling on a motion to strike brought under section 425.16, the trial court must engage in a two-step process that involves shifting burdens. *Kearney v. Foley & Lardner LLP*, 590 F.3d 638, 648 (9th Cir. 2009). First, the defendant must make an initial prima facie showing that the plaintiff's challenged cause of action "arises from" an act in furtherance of the defendant's rights of petition or free speech. *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1056 (2006). "A cause of action 'arising from' [a party's] litigation activity may appropriately be the subject of an [anti-SLAPP motion to strike]." *Id.* (citation omitted). Such activity "includes communicative conduct such as the filing, funding, and prosecution of a civil action." *Id.* (citation omitted).

Second, "[i]f the court determines that the defendant has met this burden, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the merits." *Kearney*, 590 F.3d at 648 (citation omitted); *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal. 4th 728, 733 (2003). "'Reasonable probability' in the anti-SLAPP statute has a specialized meaning" and "requires only a 'minimum level of legal sufficiency and triability.'" *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 598 (9th Cir. 2010) (quoting *Linder v. Thrifty Oil Co.*, 23 Cal. 4th 429, 438 n.5 (2000)). "Indeed, the second step of the anti-SLAPP inquiry is often called the 'minimal merit' prong." *Id.* (citations omitted). "'Put another way, the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'" *Id.* at 599

5

(quoting *Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811, 821 (2002)); *see also Navellier v. Sletten*, 29 Cal. 4th 82, 93 (2002) (the statute "subjects to potential dismissal only those actions in which the plaintiff cannot state and substantiate a legally sufficient claim."). "[A] reviewing court 'should grant the motion if, *as a matter of law*, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.'" *Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1183 (9th Cir. 2013) (Wardlaw, J. and Callahan J. concurring in the denial of rehearing en banc) (emphasis in original) (quoting *Vargas v. City of Salinas*, 46 Cal. 4th 1, 20 (2009)). "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." *Navellier*, 29 Cal. 4th at 89 (emphasis in original).

## DISCUSSION

In their First Cause of Action for Intentional Interference with Prospective Economic Advantage, Counterclaimants allege an "[e]conomic relationships exist between Counterclaimants and their fan base and promoters, and because of these economic relationships, Counterclaimants receive an economic benefit." FACC ¶ 44. They maintain that Chaquico, "having been a professional musician, knows of these economic relationships and intentionally and wrongfully interfered with and disrupted those economic relationships." *Id.* ¶ 45. They allege Chaquico "posted numerous inciting images and comments stating that the current Jefferson Starship is a Fake Band, despite the fact that Jefferson Starship includes founding member Freiberg and original member Baldwin and is properly licensed to use the Jefferson Starship name." *Id.* ¶ 38. As a result of Chaquico's conduct, Counterclaimants allege "actual disruption and interference has occurred between Counterclaimants and their fans and promoters." *Id.* ¶ 46.

In moving to strike their counterclaim, Chaquico argues Counterclaimants' sole purpose in bringing it is to retaliate against him "for exercising his free speech rights" and that it is "based solely on Chaqucio's statement of opinion regarding [Counterclaimants'] music and concerts on his public website." Mot. at 1.

**A.     Prima Facie Showing**

Chaquico argues his conduct is protected under section 425.16(e)(3), which recognizes

"any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest" as a protected activity. Cal. Civ. Proc. Code § 425.16(e)(3). The Court agrees. First, the public forum requirement is satisfied as Counterclaimants' cause of action is based on Chaquico's comments on his publicly-accessible website. "It is settled that Web sites accessible to the public . . . are public forums for purposes of the anti-SLAPP statute." *Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1366 (2010); *see also Cole v. Patricia A. Meyer & Assocs., APC*, 206 Cal. App. 4th 1095, 1121 (2012) ("An Internet Web site that is accessible to the general public is a public forum"); *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1039 (2008) ("Web sites accessible to the public . . . are 'public forums' for purposes of the anti-SLAPP statute.") (internal quotations and citations omitted).

Second, "'an issue of public interest' within the meaning of section 425.16, subdivision (e)(3) is *any issue in which the public is interested*." *Nygard*, 159 Cal. App. 4th at 1042 (emphasis in original). "In other words, the issue need not be 'significant' to be protected by the anti-SLAPP statute—it is enough that it is one in which the public takes an interest." *Id.* "Like the SLAPP statute itself, the question whether something is an issue of public interest must be 'construed broadly.'" *Hecimovich v. Encinal Sch. Parent Teacher Org.*, 203 Cal. App. 4th 450, 464 (2012). California courts interpreting the anti-SLAPP statute have identified three categories of information that fall within the term's ambit: (1) "[t]he subject of the statement or activity precipitating the claim was a person or entity in the public eye; (2) "[t]he statement or activity precipitating the claim involved conduct that could affect large numbers of people beyond the direct participants"; or (3) "[t]he statement or activity precipitating the claim involved a topic of widespread public interest." *Commonwealth Energy Corp. v. Investor Data Exch., Inc.*, 110 Cal. App. 4th 26, 33 (2003). Here, there is no dispute that Jefferson Starship falls within the first category as it is in the public eye; thus Chaquico's comments regarding Jefferson Starship being a "fake band" were made in connection with an issue of public interest. *See Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664, 677-78 (2010) (noting that commentary on musical bands and popular music is an issue of "public interest" under Section 425.16(e)). Accordingly, Chaquico can make a prima facie showing that the anti-SLAPP statute protects his statements.

Counterclaimants do not appear to disagree with this interpretation but instead oppose Chaquico's motion on the ground that his comments fall under the "commercial speech" exemption codified under California Civil Procedure Code section 425.17. Opp'n at 12. The California Legislature created certain exemptions from the protections afforded under the anti-SLAPP statute because of a "disturbing abuse" of the statute "contrary to the [statute's] purpose and intent." Cal. Civ. Proc. Code § 425.17(a). One such exemption is for "commercial speech." *Id.* § 425.17(c). California courts have interpreted the exemption as applying to "disputes that are purely commercial[,]" such as suits arising from comparative advertising. *Taheri Law Grp. v. Evans*, 160 Cal. App. 4th 482, 491 (2008). "The commercial speech exemption . . . is a statutory exception to section 425.16 and should be narrowly construed." *Simpson Strong-Tie Co., Inc. v. Gore*, 49 Cal.4th 12, 22 (2010) (citations and internal quotation marks omitted). And not only must the exemption be narrowly construed, but the statute explicitly provides a carve-out for "[a]ny action against any person or entity based upon the creation, dissemination, exhibition, advertisement, or other similar promotion of any dramatic, literary, musical, political, or artistic work, including, but not limited to, a motion picture or television program." Cal. Code Civ. P § 425.17(d)(2). "As to such actions, the statute continues to apply." *Forsyth v. Motion Picture Ass'n of Am., Inc.*, 2016 WL 6650059, at *4 (N.D. Cal. Nov. 10, 2016). Because Chaquico's comments were made in the course of advertising and promoting his musical work, the Court finds that they fall within the meaning of section 425.17(d)(2), and section 425.17(c)(1) therefore does not operate to exclude the protection accorded Chaquico's speech. Accordingly, Chaquico has successfully met his burden of making a prima facie showing that the comments on his website arise from an act in furtherance of his rights of petition or free speech.

**B.  Probability of Prevailing on the Merits**

Next, the Court must determine whether Counterclaimants have demonstrated a probability of prevailing on the merits. Under the anti-SLAPP statute, the standard for evaluating the strength of a case is a lenient one, with Counterclaimants only have to "show a reasonable probability of prevailing on [their] claims." *Mindys Cosmetics*, 611 F.3d at 598. "Reasonable probability" in this context means "only a minimum level of legal sufficiency and triability." *Id.*

1 (quotation omitted). Significantly, "the trial court does not weigh the evidence or determine

2 questions of credibility; instead the court accepts as true all of the evidence favorable to the

3 plaintiff." *Nagel v. Twin Labs., Inc.*, 109 Cal. App. 4th 39 (2003); *see also* Cal. Civ. P. Code §

4 425.16(b)(2).

To state a claim for intentional interference with prospective economic advantage, a plaintiff must plead: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003) (citation omitted); *CRST Van Expedited v. Werner Enter., Inc.*, 479 F.3d 1099, 1108 (9th Cir. 2007).

Under the lenient standard at this stage in the proceedings, Counterclaimants have established that their claim has the necessary "minimal merit" to survive a motion to strike. *Navellier*, 29 Cal. 4th at 95. First, Counterclaimants have submitted evidence establishing a relationship between them and the band's fan base, venues, and promoters with the probability of future economic benefit. Richardson Decl. ¶ 8, Dkt. No. 67-1 ("[A]ny touring musician understands that he or she is paid as the result of the band contracting with venues and promoters, who sell tickets to fans, revenues from which are paid to the band in accordance with those contracts.").

Second, based on Counterclaimants' evidence, the Court finds that Chaquico had knowledge about the relationship between Counterclaimants and their fan base, venues, and promoters. Chaquico himself alleges "[t]his dispute arises out of two of Chaquico's former bandmates, along with others, making unauthorized use of the Jefferson Starship name in connection with their live performances and on merchandise, as well as their unauthorized use of Chaquico's image in order to advertise and promote the sale of tickets to their live performances by explicitly misleading consumers to believe that Chaquico participates in, or otherwise sponsors and endorses such performances." Sec. Am. Compl. ¶ 2, Dkt. No. 29. Chaquico also states he is

9

aware that Counterclaimants are currently touring. Chaquico Decl. ¶ 4, Dkt. No. 47-1. Although Chaquico disputes having knowledge about Counterclaimants' tour schedule or "specific knowledge of any contracts between [Counterclaimants] and any specific venue," *id.*, he need not have known about a specific agreement with a particular venue. At this stage in the proceedings, general awareness that his actions would interfere with Counterclaimant's economic relationships is sufficient. *Sebastian Int'l, Inc. v. Russolillo*, 128 F. Supp. 2d 630, 637 (C.D. Cal. 2001) (awareness that plaintiff would lose unidentified "customers" for its hair care products sufficient to plead intentional interference with prospective economic advantage).

Third, Counterclaimants have provided evidence that Chaquico intended to disrupt the economic relationship between Counterclaimants and their fan base, including posts on his website accusing Counterclaimants of being a "Fake Band", creating "FAKE recordings", being a "lesser cover band", and consisting of "lesser artists." FACC ¶¶ 38-39. Chaquico himself states that he issued "a warning to fans" on his website to "beware" of Counterclaimants. Chaquico Decl. ¶ 6.

Finally, Counterclaimants have submitted evidence that they suffered economic harm as a result of Chaquico's actions. Specifically, Jim Lenz, Counterclaimants' booking agent who has worked with the band for over twenty years, states that he was forced to renegotiate a contracted show due to Chaquico's website postings. Lenz Decl. ¶¶ 5-7, Dkt. No. 67-2. They claim that, as a direct result of Chaquico's actions, the band lost half its original guaranteed fee. *Id.*

As Counterclaimants can establish all five elements of their intentional interference with prospective economic advantage claim with the minimal merit necessary to survive a motion to strike, the Court must deny Chaquico's motion.

## CONCLUSION

Based on the analysis above, the Court **DENIES** Plaintiff and Counterdefendant Craig Chaquico's motion to strike Defendants and Counterclaimants' counterclaim for tortious interference. Because Chaquico did not prevail on his motion, his request for attorney's fees and costs is also **DENIED**.

The parties shall appear for a Case Management Conference on August 9, 2018 at 10:00 a.m. in Courtroom B, 15th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102. This conference shall be attended by <u>lead</u> trial counsel No later than August 2, 2018, the parties shall file an updated Joint Case Management Statement containing the information in the Standing Order for All Judges in the Northern District of California, available at: http://cand.uscourts.gov/mejorders. The parties shall also state whether they wish to attend a further settlement conference with Magistrate Judge Laurel Beeler or with another magistrate judge. No chambers copy of the case management statement is required.

**IT IS SO ORDERED.**

Dated: July 10, 2018

_____
MARIA-ELENA JAMES
United States Magistrate Judge